THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LEONARD ANTHONY TROIANO, Appellant.

Second Department, March 26, 1973.

*Max Levinson* for appellant.

*Albert M. Rosenblatt, District Attorney* (*Jennifer L. Van Tuyl* and *Carl S. Wolfson* of counsel), for respondent.

SHAPIRO, J. The defendant was served with a summons for driving his automobile with a suspended license. When he failed to appear in court on the return date of the summons, a warrant was issued for his arrest. Thereafter, while driving his automobile, he was stopped by a police officer who had the warrant for his arrest. In answer to the officer's inquiry, he said he did not have his license or registration with him. When asked if he was Leonard Anthony Troiano, he denied his identity, saying

he was Frank Troiano. He was, however, positively identified by another police officer present at the scene. The first police officer then exhibited the warrant to the defendant and told him he was under arrest for the crime charged in the warrant. He was then " frisked " or " searched " and a revolver loaded with five bullets was found and withdrawn from his trouser band.[1] The officer testified that he frisked the defendant because he knew of his past criminal record.

After the defendant was indicted for the criminal possession of the loaded firearm, he moved to suppress it as evidence upon the ground that the frisk of his person was without legal foundation. That motion was denied. After the trial, the defendant was found guilty as charged in the indictment and he now appeals to this court contending that the rationale of *People* v. *Marsh* (20 N Y 2d 98) requires a reversal and the granting of his suppression motion. We do not agree.

In *Marsh* a warrant was issued for the defendant's arrest because he had failed to answer a " speeding " summons. Speeding is a traffic infraction and not a crime (Vehicle and Traffic Law, §§ 155, 1180). In the factual context of that case, Chief Judge FULD, writing for a majority of the court, said (p. 101):

" Although, as a general rule, when an individual is lawfully arrested, the police officer may conduct a contemporaneous search of his person ' for weapons or for the fruits of or implements used to commit the crime ' (*Preston* v. *United States,* 376 U. S. 364, 367), we do not believe that the Legislature intended the rule to cover arrests for traffic violations. * * *

" A motorist who exceeds the speed limit does not thereby indicate any propensity for violence or iniquity, and the officer who stops the speeder has not even the slightest cause for thinking that he is in danger of being assaulted. We can only conclude that, even though the ' rules of criminal law are generally applicable ' to traffic violations (*People* v. *Byron,* 17 N Y 2d 64, 66), *the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction* " (emphasis [other than case citations] supplied).

Here, the warrant issued for the defendant's arrest was for driving with a suspended license — a misdemeanor and not a

---

1. The record is not quite clear as to whether the defendant was subjected to a frisk or a search, the words being used interchangeably by the testifying officer. Whether it was a frisk or a search is not determinative of this appeal.

traffic infraction (Vehicle and Traffic Law, § 511).[2] Since the defendant at the time of his apprehension was driving an automobile, without having in his possession either a license or registration certificate[3], the police officer had a right to conclude, on that basis and on the basis of the fact that a warrant had been issued for the defendant's arrest for driving with a suspended license, not only that the defendant had committed the crime for which the warrant was issued but also that he was then and there committing a misdemeanor, in the officer's presence. Hence, even under *Marsh* (p. 101), the police had a right to frisk or search the defendant because there was " probable cause for believing that the offender [the defendant] * * * [was] guilty of a crime rather than merely a simple traffic infraction " (bracketed matter supplied).

That the Court of Appeals did not intend to limit the search of a driver of an automobile merely because the act he was committing was prohibited under the Vehicle and Traffic Law is made evident by its language in *Marsh* as follows (p. 102) : " In short, no search for a weapon is authorized as incident to an arrest for a traffic infraction, regardless of whether the arrest is made on the scene or pursuant to a warrant, *unless the officer has reason to fear an assault or probable cause for believing that his prisoner has committed a crime* " (emphasis added). (See, also, *People* v. *McKnight*, 26 N Y 2d 1034.)

In *People* v. *Rittenhouse* (37 A D 2d 866) the Appellate Division, Third Department, concisely stated its understanding of the meaning to be given to the *Marsh* case when it said: " Neither is there any merit to the defendant's contention that certain evidence was obtained by an illegal search and seizure. Unlike *People* v. *Marsh* (20 N Y 2d 98), relied upon by defendant, here defendant was arrested for leaving the scene of an accident which is a misdemeanor, and not a mere traffic violation."

However, even if *Marsh* could possibly be interpreted to mean that *ordinarily* in no case arising out of a violation of the Vehicle

2. Section 155 of the Vehicle and Traffic Law declares that a " traffic infraction " is not a crime and defines it as " the violation of any provision of this chapter or of any law, ordinance, order, rule or regulation regulating traffic which is not declared by this chapter or other law of this state to be a misdemeanor or a felony." Section 511 of the same law declares that the operator of a motor vehicle upon a public highway while his license is suspended or revoked " shall be guilty of a misdemeanor." Subdivision 4 of section 10 of the Penal Law states: " ' Misdemeanor ' means an offense, other than a ' traffic infraction '." Subdivision 6 states: " ' Crime' means a misdemeanor or a felony."

3. Nonpossession of such documents was a violation of paragraph e of subdivision 1 of section 501 of the Vehicle and Traffic Law, which violation is defined as a misdemeanor by subdivision 10 of that section.

and Traffic Law could a search be made, this is not the ordinary case, for here the arresting officer testified — and his testimony was accepted as credible by the hearing court — that he believed the defendant to be dangerous, since he had seen his '' parole file and in this file was his picture and his record.''[4]

Under such circumstances, and regardless of his conclusion that '' the Legislature never intended to authorize a search of a traffic offender,'' Chief Judge FULD was most careful to add: '' unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction '' (*People* v. *Marsh,* 20 N Y 2d 98, 101, *supra*). Knowing that the defendant had been convicted of robbery and a number of other crimes involving revolvers, the arresting officer certainly had a right to '' suspect '' that he was in danger if he attempted to or did arrest the defendant without searching him.[5]

The decision denying suppression was therefore properly made.

We have considered the other points raised by the defendant in his brief and on the argument of this appeal and find them to be without merit.

The judgment of conviction should therefore be affirmed.

HOPKINS, Acting P. J., MUNDER, MARTUSCELLO and LATHAM, JJ., concur.

Judgment of the Supreme Court, Dutchess County, rendered September 21, 1970, affirmed.

---

4. Though there is no testimony in the record on appeal as to the nature of this '' record '', it is set forth in a prior felony information filed by the District Attorney in a subsequent case and in other papers. It shows a conviction for robbery in the third degree in 1935, a conviction for violation of a Federal statute against possession of stolen goods in 1962 and other misdemeanor convictions involving revolvers and several parole violations.

5. We should not engage in arcane legalisms to place a police officer in greater jeopardy than his job, in any event, makes necessary. That in some circles there is '' open season '' on the police is daily made more evident (*New York Times,* Jan. 30, 1973, p. 43). In determining whether he is in danger, a police officer has no time for great reflection; he must act on appearances and, unless constitutionally compelled to do so, his conduct, if at all reasonable, in the light of events as he sees them, should not be second-guessed by a court.